## The Austin Powder Company, Appellee, v. Charles D. Crouch et al., Appellants.

### Gen. No. 16,464.

FRAUD AND DECEIT—*when no reliance on representations.* A creditor cannot recover for alleged fraud and deceit in representations concerning bonds given to secure payment for goods furnished, where it appears from the testimony of the creditor's agent that he did not rely on the representations but independently investigated the value of the bonds through his own agent and relied solely on his favorable report.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed with finding of facts. Opinion filed December 11, 1912.

FREDERICK P. READ and HAMILTON & HAMILTON, for appellants.

CHILDS & CHILDS and CHARLES HUDSON, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

Appellee recovered a verdict and judgment in the Circuit Court against appellants, Charles D. Crouch, William T. Coad, Joseph H. Muhlke and Forest C. Murdock, for $5,465.51, in an action for damages for fraud and deceit.

The declaration contains three counts. The first count charges that while appellee was dealing in blasting supplies, the Dakota Pacific R. R. Co., a corporation organized under the laws of South Dakota, applied to it for explosives and offered seven of its bonds of $1,000 each as security, and referred appellee to the appellants for information respecting the character and value of said bonds; that appellants, knowing that said railroad was insolvent and that said bonds were not secured by a first mortgage and were not first mortgage bonds, falsely and fraudulently represented to appellee that the said bonds were first mortgage bonds and a prior lien on said railroad; that relying on said statements appellee gave credit and delivered goods to said Dakota Pacific R. R. Co. to the amount of $10,000; that said bonds were not first mortgage bonds and were not secured by a first lien on said railroad or any railroad, but were worthless, and said railway company was then insolvent, whereby appellee lost said goods and the price and value thereof. The second count charges that the appellants, Coad, as president, Muhlke, as vice-president, Murdock, as secretary, and one Gray, as treasurer, of said Dakota Pacific R. R. Co., issued or caused to be made seven $1,000 bonds, numbered from 140 to 146 inclusive, and conspired together with appellant Crouch, as agent, to cheat and defraud appellee, and applied to appellee to sell goods to said railway company on credit, on the security of said bonds, and stated to appellee that said bonds were first mortgage bonds of said railway company, etc. The third count does not differ substantially from the second count. To this declaration appellants pleaded the general issue.

The main facts, in the chronological order of their occurrence, are substantially as follows: In 1891 the Dakota, Wyoming and Missouri River Railroad Company, was organized and incorporated under the laws of South Dakota for the purpose of constructing and operating a railroad in said state between Rapid City

and Mystic, a distance of about 33 miles. Appellants, Coad and Murdock, were president and secretary respectively of said company, and appellant Crouch was the general contractor for the construction of the road. In October, 1891, a mortgage upon all the property of the company was authorized and executed to secure the payment of 630 bonds, each of the par value of $1,000 to be issued in amounts not exceeding $20,000 for each and every mile of fully completed and equipped road. Construction and equipment work was prosecuted until 1893, when, owing to the then prevailing financial panic, no more funds were available and the work ceased. Eight miles of road had then been completed and bonds to the amount of $160,000 had been issued. Appellant, Muhlke, had then personally loaned the company about $40,000, and had procured loans aggregating $55,000 from certain of his clients, and to secure the payment of said loans he held the bonds of the company for an equal amount. A considerable portion of the right of way of the said railroad had been laid out through government land under an act of congress which permitted public lands to be appropriated for the purpose of constructing railroads, which act also provided that if any section of said railroad should not be completed within five years after the location of such section, the right thereby granted should be forfeited as to any such uncompleted section of said railroad. A portion of the right of way of said railroad, so laid out through government land, passed through narrow canyons or defiles in which there was only sufficient space for the construction and operation of one railroad, and such portions of the said railroad were located, subject to a provision of said Act of Congress, as follows:

"That any railroad company whose right of way or whose track or road bed upon such right of way passes through any canyon, pass, or defile, shall not prevent any other railroad company from the use and occupancy of the said canyon, pass, or defile, for the

purposes of its road, in common with the first located, or the crossing of other railroads at grade.''

When work ceased upon the said railroad in 1893, it was indebted in a large amount in addition to its bond issue of $160,000, for labor, material and supplies, and mechanics' liens had been filed and judgments had been obtained against it by its numerous creditors.

In October, 1898, a charter was obtained for the incorporation of the Dakota Pacific R. R. Co., and said company was incorporated under the laws of South Dakota, and authorized to construct and operate a railroad between Rapid City and Mystic over substantially the same route which had been located by the Dakota, Wyoming & Missouri River Railroad Company. Appellants, Coad, Muhlke and Murdock, were elected directors and principal officers of said Dakota Pacific R. R. Co. as follows: Coad, president, Muhlke, vice-president, and Murdock, secretary. The particular purpose of organizing the last named company is stated by appellant, Coad, in his testimony, as follows: ''Fearing that under the Act of Congress, under which this (the Dakota, Wyoming & Missouri River R. R. Co.) survey was made, the five years having elapsed, and the road not being completed, that the rights and construction work might be lost to the people that had furnished the money to do it, we organized the Dakota Pacific R. R. Co., so as to protect the rights of all parties concerned.''

A bond issue of $650,000 to be secured by a purported first mortgage on the property of the company was authorized and a contract entered into with the American Promoting and Trust Co. of Boston to underwrite $500,000 of said bonds. It was the purpose of the railroad company to retain $150,000 of said bonds and exchange the same for bonds of like amount of the Dakota, Wyoming & Missouri River R. R. Co., held by creditors of said last named company. The Dakota Pacific R. R. Co. also then secured options for the

payment of all liens and judgments against the Dakota, Wyoming & Missouri River R. R. Co., and also secured options for the right of way of said last named company over private lands and took entire possession of said last named road and all of its assets and property. On May 15, 1899, the Dakota Pacific R. R. Co., by appellant, Coad, its president, and appellant, Murdock, its secretary, executed 650 bonds, each for $1,000, purporting to be its first mortgage gold bonds secured by a first mortgage on its right of way and all of its property, income, etc., and also then executed what purported to be a first mortgage or trust deed securing said bonds, to the International Trust Co. of Boston, as trustee. About the same time appellant, Crouch, was appointed agent of said company to secure material and supplies, and to carry on the construction of its proposed railroad. Acting in such capacity, Crouch interviewed E. S. Rice, the agent of appellee, for the purpose of negotiating for the purchase of explosives and other incidental supplies necessary for use in the construction of said road. Appellant, Muhlke, was informed of the negotiations then pending between Crouch and several dealers, including Rice, for the purchase of supplies and participated in a conference with Crouch and Coad, as to the means to be adopted in securing credit upon which the necessary supplies, etc., could be purchased. Appellant, Crouch, testified that Muhlke then said: "If we could get credit around for the material we had to have, so that he would not have to pay for them, he would advance some money for the other things necessary for the prosecution of the work. Go ahead and rustle, and if we could get those so he did not have to pay for them, he would furnish some money to do other things that those credits would not do for us." Rice refused to sell supplies to the company unless payment therefor was secured and Crouch then proposed that Rice accept seven first mortgage bonds of the company as security for the payment of such supplies, and exhibited and

gave to Rice a copy of one of said bonds and of the mortgage securing the same and also a copy of the contract between the railroad company and The American Promoting and Trust Company for the sale of said bonds. Crouch then also gave Rice a printed prospectus of the railroad and copies of reports by experts and statements made by others prepared and circulated for the purpose of inducing investors to purchase the bonds. Rice testified that Crouch then told him that the bonds were perfectly good; that he had some of them himself and was using them with other people in the purchase of supplies; that they were secured by a first mortgage on the property of the road, part of which had been constructed. Crouch does not deny that he made such statements to Rice. Rice refused to extend the line of credit applied for until he had made an independent investigation as to the bonds, and to this end he communicated with a business acquaintance in or near Boston, stating the name of the railroad and of the trustee in the deed of trust and of the underwriting company and requesting that inquiry and investigation be made as to the value of the bonds and he be advised. Shortly thereafter, Rice received from his correspondent a favorable report upon the bonds as security and immediately informed Crouch that he would accept the same. Rice testified that he would not have extended credit upon the bonds, if his correspondent's reply to his communication had not been favorable. Coincident with the purchase by Crouch of the required explosives from Rice, as agent, the latter accepted seven of said bonds as security and entered into an agreement, as follows:

"This Memorandum of Agreement entered into this first day of September, A. D. 1899, between W. T. Coad, President Dakota Pacific Railroad Co., party of the first part, and E. S. Rice, agent, party of the second part, WITNESSETH:

"That whereas, first party has bought and is proposing to buy explosives in considerable quantities from second party, and desires some accommodation

in respect to payment from first party, and said explosives are to be used in the construction of certain sections of the Dakota Pacific Railroad, and first party desires to secure second party any balance that may be due at any time from first party to second party;

"Therefore, said first party has deposited with second party, first mortgage bonds numbered from 140 to 146, inclusive, of said Railroad Co. as collateral security, to secure payment of any balance at any time due from first party to second party, on account of the sale of explosives, as aforesaid, or otherwise; full and complete authority is hereby given to said second party, his agents and attorneys to sell any or all of said collateral or any additional collateral that may at any time be deposited with said second party at any time said second party may deem it for his best interests so to do at either public or private sale, without notice of the time, place or intention of second party to make such sale; such notice being hereby expressly waived, and to apply the proceeds of such sale or sales to the payment of any indebtedness remaining due from first party to second party including expenses of such sale, and the balance, if any, to remit to the party of the first part.

"Given under our hands and seals the day and year first above written.

DAKOTA PACIFIC RAILROAD CO.,
By WILLIAM T. COAD,
President, (SEAL.)
E. S. RICE, Agent. (SEAL.)"

Late in 1899 or early in 1900 The American Promoting & Trust Co., after remitting about $4,000 to the Dakota Pacific R. R. Co., became financially embarrassed and was unable to further fulfil its contract to underwrite the bond issue, and in the spring of 1900 further construction work ceased for lack of funds. The bonds amounting to $150,000, which were retained by the Dakota Pacific R. R. Co., had been then exchanged by it for bonds of the Dakota, Wyoming & Missouri River R. R. Co., and issued to other creditors of both companies in payment of claims and to secure the payment of claims.

In 1902 appellee recovered judgments in the Circuit Court of Cook county, Illinois, and in the United States Circuit Court for the Western Division of South Dakota against the Dakota Pacific R. R. Co., for $4,177.63 for explosives sold to it, upon which judgment executions were issued and returned unsatisfied.

In August, 1903, in a proceeding instituted in the Circuit Court of Pennington county, South Dakota, to establish and foreclose certain mechanics' liens, wherein all persons having any interest in or claim against the property of the Dakota Pacific R. R. Co. and the Dakota, Wyoming & Missouri River R. R. Co. were made parties defendant, the said property was ordered sold to satisfy said liens and was thereafter sold to Charles D. Crouch and Francis Seiberling, trustees, for $35,052.29. On June 17, 1904, said Crouch and Seiberling, trustees, conveyed said property to the Missouri River & Northwestern R. R. Co., a South Dakota corporation.

Of the numerous questions raised upon the record we deem it necessary to consider and determine but one, which is decisive of the case against appellee. In the view we are impelled to take, it may be conceded that the right of way of the two railroad corporations was substantially identical; that the mortgage executed by the Dakota Pacific R. R. Co. covered substantially the same property described in the mortgage executed by the Dakota, Wyoming & Missouri River R. R. Co.; that appellant, Crouch, acting with the knowledge and approval of the other appellants, for the purpose of securing credit, falsely represented to Rice, the agent of appellee, that the bonds in question were secured by a first mortgage upon the property described therein.

It is elementary that a party seeking to recover in an action for fraud and deceit must allege and prove that he relied upon the alleged false and fraudulent representations to his injury. In this case, it is clearly established by the evidence that Rice refused to rely

upon the representations made by Crouch as to the sufficiency of· the bonds as security, and refused to accept the bonds tendered until he had made an independent investigation as to the value of the bonds as security, and obtained information from the source selected by himself that the bonds were good security. Rice testified that he would not have accepted the bonds and extended credit upon them, if he had not received a report favorable to the bonds as security. There is evidence tending to show that at the time Crouch sought to purchase explosives and was refused credit by Rice, that he was indebted to Rice in a considerable amount for explosives purchased by him and used in the construction of the Dakota, Wyoming & Missouri River R. R. Co., and that the conduct of Rice in seeking independent information as to the value of the bonds as security was influenced by his want of confidence in Crouch and in his assurances. In view of the somewhat equivocal testimony of Rice to the effect that he did not think he mentioned the existence of a prior mortgage in his correspondence relative to the value of the bonds as security, and did not think he then knew there was a prior mortgage, it is not without significance that the correspondence itself was not produced by the witness or by appellee after due notice to produce the same.

We cannot escape the conclusion that in accepting the bonds in question as security Rice did not rely upon the representations of Crouch, but that he pursued an independent investigation through a correspondent of his own choosing, as to the value of said bonds as security, and relied solely upon the favorable report of such correspondent, and that, but for such report, he would not have accepted said bonds.

The judgment is reversed with a finding of facts to be incorporated in the judgment of this court.

*Reversed with finding of facts.*ˈ

Finding of facts: We find as ultimate facts that appellee, acting through its agent, E. S. Rice, did

not rely upon the truth of the false representations made by the appellants or any or either of them, as alleged in the declaration, but that appellee, acting through its said agent, refused to rely upon the truth of such representations and conducted an independent investigation through a correspondent of its own choosing as to the value of the bonds in question as security, and that appellee, through its said agent, accepted said bonds as security upon the faith, solely, of the favorable report by its said correspondent of the value of said bonds.